Lewis Jubran, Esq. (DC Bar no. 1028219)
Abusharar and Associates
501 N. Brookhurst St. #202
Anaheim, CA 92801
Tel: 714-535-5600
Fax: 714-535-5605
Email: associate@abushararlaw.com
Attorney for Plaintiffs

## UNITED STATES DISTRICT COURT

## DISTRICT OF COLUMBIA

| | |
|---|---|
| Hanaa Daoud;<br>Abdulrahman Adil Bushra Ahmed;<br><br>7525 Lincoln Circle, #207<br>McClean, VA   22102-5934<br><br>              Plaintiffs,<br><br>vs.<br><br>**United States Department of Homeland Security; United States Citizenship and Immigration Services; Alejandro Mayorkas**, Secretary, Department of Homeland Security; **Ur M. Jaddou**, Director, U.S. Citizenship and Immigration Services; **Ted H. Kim,** Associate Director of Refugee, Asylum, and International Operations; **Arlington Asylum Office; Jedidah Hussey,** Director of the Arlington Asylum Office;  **Matthew D. Emrich,** Associate Director of USCIS Fraud Detection and National Security Directorate;<br><br>Office of General Counsel<br>US Department of Homeland Security 2707 Martin Luther King Jr. Ave., SE<br>Washington DC   20528-0485 | Case No.:<br><br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR A WRIT IN THE NATURE OF IMMIGRATION MANDAMUS |

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR A WRIT IN THE NATURE OF IMMIGRATION MANDAMUS - 1

**Christopher A. Wray,** Director of Federal
Bureau of Investigations

Attorney General
US Department of Justice
950 Pennsylvania Ave, NW
Washington DC   20530-0001

Defendants.

## **INTRODUCTION**

1.   This action is brought by Plaintiffs Hanna Daoud and Abdulrahman Adil Bushra Ahmed by and through their attorney, to request issuance of a writ of mandamus or in the nature of mandamus and/or to compel under the Administrative Procedure Act ("APA") ordering Defendants and those acting under them to process an Application for Asylum and for Withholding of Removal which was received and pending as of February 29, 2016, and which has still has not been called for an interview.

2.   On February 29, 2016, Plaintiff Hannah Daoud filed an I-589 Application for Asylum and for Withholding of Removal to the Arlington Asylum Office.  The basis of her asylum application is that she fears persecution in Sudan on account of her political opinion and the fact that she is a victim of feminine genital mutilation.   **(Exhibit A – I-589 Application for Asylum and Withholding of Removal and Receipt Notice)**.

3.   On March 1, 2016, Defendant USCIS sent a Notice to Plaintiffs directing them to appear at a designated USCIS Application Support Center between March 4, 2016 and March 18, 2016, in order to have their biometric information obtained.   **(Exhibit B – I-797 Notice of Action –**

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR A WRIT IN THE NATURE OF IMMIGRATION MANDAMUS - 2

**Fingerprint Notification**).   Plaintiffs did appear at the designated location and their biometrics were obtained.

4.   Since Plaintiffs had their biometrics taken by Defendant USCIS, they have not received any further communications from Defendant Arlington Asylum Office about when their case would be scheduled for an interview.

5.   Defendants have violated the Administrative Procedures Act ("APA") by failing to schedule Plaintiffs' asylum application for an interview which has been pending now for over six years.  Plaintiffs seeks to compel Defendants, through a writ of mandamus, to schedule an interview(s) for the pending asylum application.

## PARTIES

6.   Plaintiff HANAA DAOUD is a citizen of Sudan.   Plaintiff filed her I-589 Application for Asylum and Withholding of Removal on February 29, 2016.  Plaintiff ADIL BUSHRA Plaintiff ABDULRAHMAN ADIL BUSHRA AHMED is her child and he is listed as a derivative applicant on her application.

7.   Defendant UNITED STATES DEPARTMENT OF HOMELAND SECURITY (hereinafter "DHS") is an agency of the United States government involved in the acts challenged, employs the officers named as defendants, and includes the U.S. Citizenship and Immigration Services and the officers named as defendants in this complaint.

8.   Defendant UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES (hereinafter "USCIS") is an agency of the United States government under the DHS, overseeing the officers named as defendants in this Complaint.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR A WRIT IN THE NATURE OF IMMIGRATION MANDAMUS - 3

9.   Defendant ALEJANDRO MAYORKAS (hereinafter "Secretary Mayorkas") is the Secretary of the Department of Homeland Security.  This suit is brought against Secretary Mayorkas in his official capacity, as he is charged with the administration and enforcement of all immigration and citizenship laws that are bound in the powers, duties, and functions of the Department of Homeland Security.

10. Defendant UR M. JADDOU (hereinafter "Director Jaddou") is the Director of USCIS, the Agency charged with adjudicating Plaintiff's asylum application.  This suit is brought against Director Jaddou in her official capacity, as she is charged with oversight, administration, and execution of immigration laws of the United States.

11. Defendant TED H. KIM (hereinafter "Acting Associate Director Kim") is the Acting Associate Director of Refugee, Asylum, and International Operations.  This suit is brought against Acting Associate Director Kim in his official capacity, as he is charged with supervision over all asylum offices, and requires some applications to be forwarded to headquarters before final adjudication, and may, upon information and belief, have ordered that Plaintiff's case be forwarded to his office for its review.

12. Defendant ARLINGTON ASYLUM OFFICE (hereinafter "Arlington Asylum Office") is an office within USCIS and the federal agency with direct authority and responsibility to adjudicate Plaintiff's asylum application.

13. Defendant JEDIDAH HUSSEY (hereinafter "Director Hussey") is the director of the Arlington Asylum office.  This suit is brought against Director Hussey in his official capacity, as

he is charged overseeing the adjudication of the asylum applications at the Arlington Asylum Office in a timely manner, and ensuring the efficiency of the officers employed.

14.   Defendant MATTHEW D. EMRICH (hereinafter "Associate Director Emrich") is the Associate Director of USCIS Fraud Detection and National Security Directorate.  This suit is brought against Associate Director Emrich in his official capacity, as he supervises all USCIS staff who review asylum applications to ensure that immigration benefits are not granted to individuals who pose a threat to national security or public safety, or who seek to defraud the immigration system.  Certain applications must be reviewed by the Fraud Detection and National Security Directorate before their final adjudication.  Upon information and belief, USCIS has not processed Plaintiffs' asylum application because the Fraud Detection and National Security Directorate has never completed its review.

15. Defendant CHRISTOPHER A. WRAY (hereinafter "Director Wray") is the Director of the Federal Bureau of Investigations.  This suit is brought against Director Wray in his official capacity, as he is responsible for overseeing the background checks involved with immigration matters.

**JURISDICTION**

16. The Administrative Procedure Act recognizes a right of judicial review for any person "suffering legal wrong because of an agency action or aggrieved or adversely affected by such action within the meaning of any relevant statutes." 5 U.S.C. § 702.  Plaintiffs suffered a legal wrong and continue to suffer because of the Defendants' failure to act upon the pending Asylum application for indefinite periods of time.

17. This Court has jurisdiction over the present action pursuant to 8 C.F.R. § 204, Immigration & Nationality Act §203 (b)(1)(C); 28 U.S.C. § 1131; 28 U.S.C. §1361, the Mandamus Act; 28 U.S.C. §2201, the Declaratory Judgment Act; and 5 U.S.C. §701-706, the Administrative Procedures Act.  Costs and attorney fees will be sought pursuant to the Equal Access to Justice Act, 5 U.S.C. §504 and 28 U.S.C. §2412(d), et seq. Relief is requested pursuant to said statutes.

18. The APA also provides pursuant to 5 U.S.C. § 706(1) that courts "shall compel agency action unlawfully withheld."  Courts have held that this provision eliminates court discretion to grant relief once an agency has violated a statutory deadline.  *See Biodiversity Legal Foundation v. Badgley,* 309 F.3d 1166, 1178 (9th Cir. 2002) (noting that when "Congress has specifically provided a deadline for performance, … no balancing of factors is required or permitted.")

## VENUE

19. Venue is proper in this Court, pursuant to 28 U.S.C. §1391(e) which provides that in a civil action in which each defendant is an officer or employee of the United States or any agency thereof acting in his or her official capacity, or under the color of legal authority, or any agency of the United States, the action may be brought in any judicial district in which the defendant in the action resides.   Because the Defendants are in the District of Columbia, including the United States Department of Homeland Security and its employees, venue is proper in this Court.

## EXHAUSTION OF REMEDIES

**20.** Plaintiffs have no administrative remedies.  Since February 29, 2016, Plaintiffs have received no correspondence or communications whatsoever from Defendants about the pending

asylum application and when it will be scheduled for an interview.   There are no administrative remedies for neglect of duty.

## **CAUSE OF ACTION**

21. Pursuant to 8 U.S.C. §1158, Plaintiff Hanaa Daoud filed an Application for Asylum and Withholding of Removal with Defendant United States Citizenship and Immigration Services on February 29,2016.   (**Exhibit A – I-589 Application for Asylum and Withholding of Removal and Acknowledgement of Receipt**).

22. Shortly after filing her application, Plaintiffs were instructed to appear at an application support center to have their biometric information captured.   (**Exhibit B-I-797 Notice of Action**)

23. Plaintiffs did timely present themselves at the designated application support center and had their biometric information collected.

24. Since they provided their biometric information, Plaintiff Hanaa DaDaoud has not received any communications whatsoever from Defendant Arlington Asylum Office or any other defendant about when the asylum interview will be scheduled.   Plaintiffs therefore have no way of knowing how much longer the scheduling process will take.

25. Under 28 U.S.C. § 1361, the district courts shall have original jurisdiction of any action in the nature of a mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

26. Under the Administrative Procedures Act, a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.

27. Defendants have a statutory duty to adjudicate asylum requests within 180 days of filing pursuant to 8 U.S.C. § 1158(d)(5)(A)(iii). It has been over six years since Plaintiff Hanaa Daoud applied for Asylum and her case has still not been scheduled for an interview.

28. Plaintiffs have no adequate remedy at law, and will continue to suffer irreparable harm if the asylum application is not promptly scheduled for an interview and adjudicated.

27. Pursuant to 28 U.S.C. § 1361, this Court has "original jurisdiction in the nature of the mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the [Plaintiffs.]"

28. Pursuant to 28 U.S.C. § 1651, this Court may issue any and all "writs necessary or appropriate in aid of [the Court's] respective jurisdiction [ ] and agreeable to the usages and principles of law."

## **CLAIM FOR RELIEF**

29. Plaintiffs' claim in this action is clear and certain. Plaintiff realleges paragraphs 1 through 28, and, as if fully set forth, Plaintiffs are entitled to an order in the nature of mandamus to compel Defendants to complete administrative processing and schedule an interview for the pending Asylum application.

30. As a result of Defendants' failure to perform their duties, Plaintiffs have suffered, are suffering, and will continue to suffer irreparable harm. Specifically:

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR A WRIT IN THE NATURE OF IMMIGRATION MANDAMUS - 8

a.  Plaintiffs have been irreparably damaged from the fear of not knowing what will happen

with the asylum case for the past six years.  They have been constantly hoping for a date

to interview for the application for asylum, so they would not have to worry about their

future.  Because of the long wait and unknowing, Plaintiffs are enduring significant

psychological damage.

b.  The delay is causing irreparable harm to Plaintiffs who are not able to continue with their

lives in the United States without fear of returning to Sudan, a country where they will

more likely than not be persecuted, tortured, or killed.

31. The Defendants, in violation of the Administrative Procedures Act, are unlawfully

withholding or unreasonably delaying action on Plaintiff Hanaa Daoud's application, and have

failed to carry out the non-discretionary adjudicative functions delegated to them by law with

regard to his case.

32. The Defendants, in violation of the Administrative Procedures Act and 22 C.F.R.

42.81(a), are unlawfully withholding or unreasonably delaying action on Plaintiff's application

and have failed to carry out the non-discretionary adjudicative functions delegated to them by

law with regard to her case.

33. The duty of the Defendants is non-discretionary, ministerial, and so plainly described as

to be free from doubt that mandamus is appropriate.

34. Plaintiff Hanaa Daoud has attempted to learn about the status of her pending Asylum and

Withholding of Removal application, all to no avail.  Only Defendant United States Citizenship

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR A WRIT IN THE NATURE OF
IMMIGRATION MANDAMUS - 9

and Immigration Services is able to make decisions on scheduling an asylum interview, leaving

no adequate remedy.  Accordingly, Plaintiffs have been forced to pursue the instant action.

**PRAYER**

35. WHEREFORE, in view of the arguments and authorities noted herein, Plaintiffs

respectfully prays that the Defendants be cited to appear herein and that, upon due consideration,

the Court:

a.  Accept jurisdiction and maintain continuing jurisdiction of this action;

b.  Declare as unlawful the violation by Defendants of failing to act on a properly

filed Asylum and Withholding of Removal application;

c.  Declare Defendants' failure to carry out the adjudicative functions delegated to

them by law with regard to Plaintiffs' case as agency action unlawfully withheld

and unreasonably delayed, pursuant to 5 U.S.C. § 706(1);

d.  Issue a preliminary and permanent injunction pursuant to 28 U.S.C. § 1361 and

5 U.S.C. § 706(1) compelling the Defendants to take action on Plaintiff Hanaa

Daoud's Asylum application by promptly scheduling her interview and then

timely adjudicating her case;

e.  Issue a writ in the nature of mandamus pursuant to 28 U.S.C. § 1361 and 5 U.S.C.

§ 706(1), compelling the Defendants to take action on Plaintiff Hanaa Daoud's

Withholding of Removal application by promptly scheduling her interview and

then timely adjudicating her case;

f.  Grant attorney's fees and costs of this suit under the Equal Access to Justice Act, 28 U.S.C. § 2412;

g.  Grant such other relief at law and in equity as justice may require.

Dated this March 1, 2022                    Respectfully Submitted,

/s/ Lewis Jubran

Lewis Jubran, Esq.
Counsel for Plaintiffs

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR A WRIT IN THE NATURE OF IMMIGRATION MANDAMUS - 11

# LIST OF EXHIBITS TO COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR A WRIT IN THE NATURE OF IMMIGRATION MANDAMUS

## DAOUD v UNITED STATES DEPARTMENT OF HOMELAND SECURITY

| Exhibit | Description | Pages |
|---------|-------------|-------|
| A | I-589 Application for Asylum and Acknowledgment of Receipt | 1-19 |
| B | I-797 Notice of Action | 20-21 |

**EXHIBIT A**

Department of Homeland Security
U.S. Citizenship and Immigration Services
Executive Office for Immigration Review

OMB No. 1615-0067; Expires 12/31/2016

**I-589, Application for Asylum and for Withholding of Removal**

START HERE - Type or print in black ink. See the instructions for information about eligibility and how to complete and file this application. There is NO filing fee for this application.

NOTE: Check this box if you also want to apply for withholding of removal under the Convention Against Torture. ☒

**Part A.I. Information About You**

| 1. Alien Registration Number(s) (A-Number) (if any) | | 2. U.S. Social Security Number (if any) | ☒ |
|---|---|---|---|

| 3. Complete Last Name | 4. First Name | 5. Middle Name |
|---|---|---|
| AYOUD | HANAA | HASHIM ALI |

| 6. What other names have you used (include maiden name and aliases)? |
|---|
| None |

| 7. Residence in the U.S. (where you physically reside) | | | |
|---|---|---|---|
| Street Number and Name | | | Apt. Number |
| 1700 Westwind Way | | | |
| City | State | Zip Code | Telephone Number |
| McLean | VA | 22102 | ( ) |

| 8. Mailing Address in the U.S. (if different than the address in Item Number 7) | | | |
|---|---|---|---|
| Same as above | | | |
| Street Number and Name | | | Apt. Number |
| City | State | Zip Code | Telephone Number (703) 870-5266 |

| 9. Gender: ☐ Male ☒ Female | 10. Marital Status: ☐ Single ☒ Married ☐ Divorced ☐ Widowed |
|---|---|

| 11. Date of Birth (mm/dd/yyyy) 08/08/1975 | 12. City and Country of Birth Wad Medani, Sudan |
|---|---|

| 13. Present Nationality (Citizenship) Sudanese | 14. Nationality at Birth Sudanese | 15. Race, Ethnic, or Tribal Group Fur | 16. Religion Muslim |
|---|---|---|---|

17. Check the box, a through c, that applies: a. ☐ I am now in Immigration Court proceedings. b. ☒ I have never been in Immigration Court proceedings. c. ☐ I am not now in Immigration Court proceedings, but I have been in the past.

| 18. Complete 18 a through c. | | | |
|---|---|---|---|
| a. When did you last leave your country? (mm/dd/yyyy) 01/01/2014 | | b. What is your current I-94 Number, if any? 7411634630 | |
| c. Please list each entry into the U.S. beginning with your most recent entry. List date (mm/dd/yyyy), place, and your status for each entry. (Attach additional sheets as needed.) | | | |
| Date 10/27/2014 | Place Washington-Dulles, VA | Status B2 | Date Status Expires 03/14/2016 |
| Date 09/15/2015 | Place Washington-Dulles, VA | Status B2 | |
| Date N/A | Place N/A | Status N/A | |

| 19. What country issued your last passport or travel document? UAE | 20. Passport Number P01163658 Travel Document Number N/A | 21. Expiration Date (mm/dd/yyyy) 03/04/2020 |
|---|---|---|

| 22. What is your native language? Arabic | 23. Are you fluent in English? ☐ Yes ☒ No | 24. What other languages do you speak fluently? None |
|---|---|---|

**For EOIR use only.**

**For USCIS use only.**

| Action: | Decision: |
|---|---|
| Interview Date: | Approval Date: |
| Asylum Officer ID#: | Denial Date: |
| | Referral Date: |

Form I-589 (Rev. 12/29/14) Y

## Part A.II. Information About Your Spouse and Children

Your spouse ☐ I am not married. (Skip to Your Children below.)

| 1. Alien Registration Number (A-Number) (if any) None | 2. Passport/ID Card Number (if any) P01652688 | 3. Date of Birth (mm/dd/yyyy) 01/09/1963 | 4. U.S. Social Security Number (if any) None |
|---|---|---|---|
| 5. Complete Last Name Elkhtani | 6. First Name Adil | 7. Middle Name Bushra Ahmed | 8. Maiden Name |
| 9. Date of Marriage (mm/dd/yyyy) 04/04/2004 | 10. Place of Marriage Dubai, UAE | 11. City and Country of Birth Karari, Sudan | |
| 12. Nationality (Citizenship) Sudanese | 13. Race, Ethnic, or Tribal Group Bedairi | | 14. Gender ☒ Male ☐ Female |

15. Is this person in the U.S.? ☐ Yes (Complete Blocks 16 to 24.) ☒ No (Specify location): Dubai, UAE

| 16. Place of last entry into the U.S. | 17. Date of last entry into the U.S. (mm/dd/yyyy) | 18. I-94 Number (if any) | 19. Status when last admitted (Visa type, if any) |
|---|---|---|---|

| 20. What is your spouse's current status? | 21. What is the expiration date of his/her authorized stay, if any? (mm/dd/yyyy) | 22. Is your spouse in Immigration Court proceedings? ☐ Yes ☐ No | 23. If previously in the U.S., date of previous arrival (mm/dd/yyyy) |
|---|---|---|---|

24. If in the U.S., is your spouse to be included in this application? (Check the appropriate box.)
☐ Yes (Attach one photograph of your spouse in the upper right corner of Page 9 on the extra copy of the application submitted for this person.)
☒ No

**Your Children.** List all of your children, regardless of age, location, or marital status.

☐ I do not have any children. (Skip to Part A.III., Information about your background.)
☒ I have children. Total number of children: 1

(NOTE: Use Form I-589 Supplement A or attach additional sheets of paper and documentation if you have more than four children.)

| 1. Alien Registration Number (A-Number) (if any) None | 2. Passport/ID Card Number (if any) P01625964 | 3. Marital Status (Married, Single, Divorced, Widowed) Single | 4. U.S. Social Security Number (if any) None |
|---|---|---|---|
| 5. Complete Last Name Ahmed | 6. First Name Abdalrahman | 7. Middle Name Adil Bushra | 8. Date of Birth (mm/dd/yyyy) 02/24/2010 |
| 9. City and Country of Birth Dubai, UAE | 10. Nationality (Citizenship) UAE | 11. Race, Ethnic, or Tribal Group Bedairi | 12. Gender ☐ Male ☒ Female |

13. Is this child in the U.S.? ☐ Yes (Complete Blocks 14 to 21.) ☒ No (Specify location): 09/25/2015

| 14. Place of last entry into the U.S. 09/25/2015 | 15. Date of last entry into the U.S. (mm/dd/yyyy) 03/14/2016 | 16. I-94 Number (if any) 74116372030 | 17. Status when last admitted (Visa type, if any) B2 |
|---|---|---|---|

18. What is your child's current status?

19. What is the expiration date of his/her authorized stay, if any? (mm/dd/yyyy)

20. Is your child in Immigration Court proceedings? ☐ Yes ☒ No

21. If in the U.S., is this child to be included in this application? (Check the appropriate box.)
☒ No (Attach one photograph of your child in the upper right corner of Page 9 on the extra copy of the application submitted for this person.)
☐ Yes

2

**Part A.II. Information About Your Spouse and Children**

**Your Spouse**

1. Alien Registration Number (A-Number) (if any)
2. Passport/ID Card Number (if any)
3. Marital Status (Married, Single, Divorced, Widowed)
4. U.S. Social Security Number (if any)
5. Complete Last Name
6. First Name
7. Middle Name
8. Date of Birth (mm/dd/yyyy)
9. City and County of Birth
10. Nationality (Citizenship)
11. Race, Ethnic, or Tribal Group
12. Gender   [ ] Male   [ ] Female
13. Is this child in the U.S.?   [ ] Yes (Complete Blocks 14 to 21.)   [ ] No (Specify location):
14. Place of last entry in the U.S.?
15. Date of last entry into the U.S. (mm/dd/yyyy)
16. I-94 Number (if any)
17. What is your current status?
18. What is the expiration date of your authorized stay, if any? (mm/dd/yyyy)
19. What is the expiration date of your authorized stay, if any? (mm/dd/yyyy)
20. Is your child in Immigration Court proceedings?   [ ] Yes   [ ] No
21. If in the U.S., is this child to be included in this application? (Check the appropriate box.)
   [ ] Yes (Attach one photograph of your spouse in the upper right corner of Page 9 on the extra copy of the application submitted for this person.)
   [ ] No

14a. Nationality (Citizenship)
14b. Race, Ethnic, or Tribal Group
14c. Gender   [ ] Male   [ ] Female
14d. U.S. Social Security Number (if any)
14e. Date of Birth (mm/dd/yyyy)

16a. Nationality (Citizenship)
16a. I-94 Number (if any)

17. State where last admitted (First type, if any)
17. Status when last admitted (First type, if any)

**Your Children (List all of your children, regardless of age, location, or marital status.)**

1. Alien Registration Number (A-Number) (if any)
2. Passport/ID Card Number (if any)
3. Marital Status (Married, Single, Divorced, Widowed)
4. U.S. Social Security Number (if any)
5. Complete Last Name
6. First Name
7. Middle Name
8. Date of Birth (mm/dd/yyyy)
9. City and County of Birth
10. Nationality (Citizenship)
11. Race, Ethnic, or Tribal Group
12. Gender   [ ] Male   [ ] Female
13. Is this child in the U.S.?   [ ] Yes (Complete Blocks 14 to 21.)   [ ] No (Specify location):
14. Place of last entry in the U.S.?
15. Date of last entry into the U.S. (mm/dd/yyyy)
16. I-94 Number (if any)
17. What is your child's current status?
18. What is the expiration date of his/her authorized stay, if any? (mm/dd/yyyy)
20a. Is your child in Immigration Court proceedings?   [ ] Yes   [ ] No
21. If in the U.S., is this child to be included in this application? (Check the appropriate box.)
   [ ] Yes (Attach one photograph of your child in the upper right corner of the extra copy of the application submitted for this person.)
   [ ] No

3

**PART A.III INFORMATION ABOUT YOUR BACKGROUND**

1. List your last address where you lived before coming to the United States. If this is not the country where you fear persecution, also list the last address in the country where you fear persecution. (List Address, City/Town, Department, Province, or State and Country.) (NOTE: Use Form I-589 Supplement B, or additional sheets of paper, if necessary.)

| Number and Street (Provide if available) | City/Town | Department, Province, or State | Country | Dates |  |
|---|---|---|---|---|---|
|  |  |  |  | From (Mo/Yr) | To (Mo/Yr) |
| Bahary Alammak | Khartoum North | Khartoum | Sudan | 09/1985 | 01/2000 |

2. Provide the following information about your residences during the past 5 years. List your present address first. (NOTE: Use Form I-589 Supplement B, or additional sheets of paper, if necessary.)

| Number and Street | City/Town | Department, Province, or State | Country | Dates |  |
|---|---|---|---|---|---|
|  |  |  |  | From (Mo/Yr) | To (Mo/Yr) |
| 1700 Westwind Way | Khartoum North | Virginia | United States | 09/2015 | Present |
| Ellison Street | Elshanga | UAE | UAE | 62014 | 09/2015 |
| Elwahda Street | Elshanga | UAE | UAE | 1/2011 | 06/2014 |
| Faisal Street | Elshanga | UAE | UAE | 01/2010 | 01/2011 |
| Algewazat Street | Elshanga | UAE | UAE | 01/2009 | 01/2010 |

3. Provide the following information about your education, beginning with the most recent. (NOTE: Use Form I-589 Supplement B, or additional sheets of paper, if necessary.)

| Name of School | Type of School | Location (Address) | Attended |  |
|---|---|---|---|---|
|  |  |  | From (Mo/Yr) | To (Mo/Yr) |
| Ash-Shuda Bahary | High School | Khartoum North, Sudan | 08/1987 | 05/1990 |
| Engelia Bahary | Middle School | Khartoum North, Sudan | 08/1985 | 05/1987 |

4. Provide the following information about your employment during the past 5 years. List your present employment first. (NOTE: Use Form I-589 Supplement B, or additional sheets of paper, if necessary.)

| Name and Address of Employer | Your Occupation | Dates |  |
|---|---|---|---|
|  |  | From (Mo/Yr) | To (Mo/Yr) |
| Unemployed (housewife) |  |  |  |
|  |  |  |  |
|  |  |  |  |

5. Provide the following information about your parents and siblings (brothers and sisters). Check box if the person is deceased. (NOTE: Use Form I-589 Supplement B, or additional sheets of paper, if necessary.)

| Full Name | City/Town and County of Birth | Current Location |
|---|---|---|
| Mohamed Hashim Ali Dawoud (Father) | Khartoum North, Sudan | ☐ Deceased  Dubai, U.A.E. |
| Sana Haytham Hashim Dawoud (Sister) | Khartoum North, Sudan | ☐ Deceased  Khartoum, Sudan |
| Layla Saad Ibrahim Mohamed (Mother) | Wad Madani, Sudan | ☐ Deceased  Dubai, U.A.E. |
|  |  | ☐ Deceased |
|  |  | ☐ Deceased |
|  |  | ☐ Deceased |
|  |  | ☐ Deceased |

Form I-589 (Rev. 12/20/16) Y Page 4

**SUPPLEMENT B, FORM I-589**

(NOTE: Use Form I-589 Supplement B, or attach additional sheets of paper as needed to complete your responses to the questions contained in Part B.)

When answering the following questions about your asylum or other protection claim (withholding of removal under the Convention Against Torture), you must provide a detailed and specific account of the basis of your claim to asylum or other protection. To the best of your ability, provide specific dates, places, and descriptions about each event or action described. You must attach documents referring to the general conditions in the country from which you are seeking asylum or other protection and the specific facts on which you are relying to support your claim. If this documentation is unavailable or you are not providing this documentation with your application, explain why in your responses to the following questions.

Refer to Instructions, Part 1: Filing Instructions, Section II, "Basis of Eligibility," Parts A - D, Section V, "Completing the Form," Part B, and Section VII, "Additional Evidence That You Should Submit," for more information on completing this section of the form.

1. Why are you applying for asylum or withholding of removal under section 241(b)(3) of the INA, or for withholding of removal under the Convention Against Torture? Check the appropriate box(es) below and then provide detailed answers to questions A and B below.

I am seeking asylum or withholding of removal based on:

☐ Race

☒ Religion

☒ Nationality

☒ Political opinion

☒ Membership in a particular social group

☒ Torture Convention

A. Have you, your family, or close friends or colleagues ever experienced harm or mistreatment or threats in the past by anyone?

☐ No     ☒ Yes

If "Yes," explain in detail:
1. What happened;
2. When the harm or mistreatment or threats occurred;
3. Who caused the harm or mistreatment or threats; and
4. Why you believe the harm or mistreatment or threats occurred.

I have been detained and tortured by the government of Sudan as a result of my activities that they considered to be in opposition to them. Please see my attached statement for details.

B. Do you fear harm or mistreatment if you return to your home country?

☐ No     ☒ Yes

If "Yes," explain in detail:
1. What harm or mistreatment you fear;
2. Who you believe would harm or mistreat you; and
3. Why you believe you would be harmed or mistreated.

I fear that I will be arrested and tortured by the government of Sudan as a result of my activities, that they consider to be in opposition to them. Please see my attached statement for details.

Form I-589 (Rev. 12/29/14) Y Page 5

**[FORM HEADER - partially obscured]**

2. Have you or your family members ever been accused, charged, arrested, detained, interrogated, convicted and sentenced, or imprisoned in any country other than the United States?

☐ No.
☒ Yes
If "Yes," explain the circumstances and reasons for the action.

I have been detained for the political reasons described on my attached statement. I have no other arrests.

3A. Have you or your family members ever belonged to or been associated with any organizations or groups in your home country, such as, but not limited to, a political party, student group, labor union, religious organization, military or paramilitary group, civil patrol, guerrilla organization, ethnic group, human rights group, or the press or media?

☐ No.
☒ Yes
If "Yes," describe for each person the level of participation, any leadership or other positions held, and the length of time you or your family members were involved in each organization or activity.

I have been a member of small, informal groups with no name. Please see my detailed statement for details. My husband is with the Umma Party, and sometimes I go with him to his meetings. I am also a member of SAFE Sudan American Foundation for Education here in the United States.

3B. Do you or your family members continue to participate in any way in those organizations or groups?

☐ No.
☒ Yes
If "Yes," describe for each person your or your family members' current level of participation, any leadership or other positions currently held, and the length of time you or your family members have been involved in each organization or group.

I am also a member of SAFE Sudan American Foundation for Education here in the United States.

4. Are you afraid of being subjected to torture in your home country or any other country to which you may be returned?

☐ No
☒ Yes
If "Yes," explain why you are afraid and describe the nature of torture you fear, by whom, and why it would be inflicted.

I am afraid that I will be tortured by the government of Sudan based upon my activities that they consider to be in opposition to them. Please see my attached statement for details.

6

**PART C. ADDITIONAL INFORMATION ABOUT YOUR APPLICATION**

(NOTE: Use Form I-589 Supplement B, or attach additional sheets of paper as needed to complete your responses to the questions contained in Part C.)

1. Have you, your spouse, your child(ren), your parents or your siblings ever applied to the U.S. Government for refugee status, asylum, or withholding of removal?

☒ No   ☐ Yes

If "Yes," explain the decision and what happened to any status you, your spouse, your child(ren), your parents, or your siblings received as a result of that decision. Indicate whether or not you were included in a parent or spouse's application. If so, include your parent or spouse's A-number in your response. If you have been denied asylum by an Immigration Judge or the Board of Immigration Appeals, describe any change(s) in conditions in your country or your own personal circumstances since the date of the denial that may affect your eligibility for asylum.

2. A. After leaving the country from which you are claiming asylum, did you or your spouse or child(ren) who are now in the United States travel through or reside in any other country before entering the United States?

☒ No   ☐ Yes

B. Have you, your spouse, your child(ren), or other family members, such as your parents or siblings, ever applied for or received any lawful status in any country other than the one from which you are now claiming asylum?

☒ No   ☐ Yes

If "Yes" to either or both questions (2A and/or 2B), provide for each person the following: the name of each country and the length of stay, the person's status while there, the reasons for leaving, whether or not the person is entitled to return for lawful residence purposes, and whether the person applied for refugee status or for asylum while there, and if not, why he or she did not do so.

I have lived Dubai with temporary residence, but I cannot return there now. My mother is in Dubai with my brother. He applied for asylum in the UK and is a British Citizen.

3. Have you, your spouse or your child(ren) ever ordered, incited, assisted or otherwise participated in causing harm or suffering to any person because of his or her race, religion, nationality, membership in a particular social group or belief in a particular political opinion?

☒ No   ☐ Yes

If so, describe in detail each such incident and your own, your spouse's, or your child(ren)'s involvement.

7

**Part C. Additional Information About Your Application (Continued)**

4. After you left the country where you were harmed or fear harm, did you return to that country?

☒ No          ☐ Yes

If "Yes," describe in detail the circumstances of your visit(s) (for example, the date(s) of the trip(s), the purpose(s) of the trip(s) and the length of time you remained in that country for the visit(s).)

5. Are you filing this application more than 1 year after your last arrival in the United States?

☒ No          ☐ Yes

If "Yes," explain why you did not file within the first year after you arrived. You must be prepared to explain at your interview or hearing why you did not file your asylum application within the first year after you arrived. For guidance in answering this question, see Instructions, Part 1: Filing Instructions, Section V, "Completing the Form," Part C.

6. Have you or any member of your family included in the application ever committed any crime and/or been arrested, charged, convicted, or sentenced for any crimes in the United States?

☒ No          ☐ Yes

If "Yes," for each instance, specify in your response: what occurred and the circumstances; dates; length of sentence received; location, the duration of the detention or imprisonment; reason(s) for the detention or conviction; any formal charges that were lodged against you or your relatives included in your application, and the reason(s) for release. Attach documents referring to these incidents, if they are available, or an explanation of why documents are not available.

## Part D. Your Signature

I certify, under penalty of perjury under the laws of the United States of America, that this application and the evidence submitted with it are all true and correct. Title 18, United States Code, Section 1546(a), provides in part: Whoever knowingly makes under oath, or as permitted under penalty of perjury under Section 1746 of Title 28, United States Code, knowingly subscribes as true, any false statement with respect to a material fact in any application, affidavit, or other document required by the immigration laws or regulations prescribed thereunder, or knowingly presents any such application, affidavit, or other document containing any such false statement or which fails to contain any reasonable basis in law or fact - shall be fined in accordance with this title or imprisoned for up to 25 years. I authorize the release of any information from my immigration record that U.S. Citizenship and Immigration Services (USCIS) needs to determine eligibility for the benefit I am seeking.

**WARNING:** Applicants who are in the United States illegally are subject to removal if their asylum or withholding claims are not granted by an asylum officer or an immigration judge. Any information provided in completing this application may be used as a basis for the institution of, or as evidence in, removal proceedings even if the application is later withdrawn. Applicants determined to have knowingly made a frivolous application for asylum will be permanently ineligible for any benefits under the Immigration and Nationality Act. You may not avoid a frivolous finding simply because someone advised you to provide false information in your asylum application. If filing with USCIS, unless otherwise instructed during your interview, you must provide USCIS with biometrics and your biographical information within the time allowed. Failure to provide biometrics or other biographical information while your asylum application is pending may result in an asylum officer dismissing your asylum application or referring it to an immigration judge. Failure without good cause to provide DHS with biometrics or other biographical information while in removal proceedings may result in your application being found abandoned by the immigration judge. See sections 208(d)(5)(A) and 208(d)(6) of the INA and 8 CFR sections 208.10, 1208.10, 208.20, 1003.47(d) and 1208.20.

Print your complete name.                     Hanna Hasini Ali Dawud

Write your name in your native alphabet.      ٢٠٢٢ ٢٠٢٢

Did your spouse, parent, or child(ren) assist you in completing this application?     ☒ No   ☐ Yes (If "Yes," list the name and relationship)

                                                                                      (Name)          (Relationship)

Did someone other than your spouse, parent, or child(ren) prepare this application?   ☒ No   ☐ Yes (If "Yes," complete Part E.)

Asylum applicants may be represented by counsel. Have you been provided with a list of persons who may be available to assist you, at little or no cost, with your asylum claim?     ☒ No   ☐ Yes

Sign your name so it all appears within the brackets

| Signature of Applicant (The person in Part I.1) | Date (mm/dd/yyyy) |
|---|---|
|  | 11 / 18 / 2015 |

## Part E. Declaration of Person Preparing Form if Other Than Applicant, Spouse, Parent, or Child

I declare that I have prepared this application at the request of the person named in Part D, that the responses provided are based on all information of which I have knowledge, or which was provided to me by the applicant, and that the completed application was read to the applicant in his or her native language or a language he or she understands for verification before he or she signed the application in my presence. I am aware that the knowing placement of false information on the Form I-589 may also subject me to civil penalties under 8 U.S.C. 1324c and/or criminal penalties under 18 U.S.C. 1546(a).

| Signature of Preparer | Print Complete Name of Preparer |
|---|---|
|  | James Roberts |

| Daytime Telephone Number | Address of Preparer: Street Number and Name |
|---|---|
| (131) 865 - 8962 | 9401 Lee Highway |

| Apt. Number | City | State | Zip Code |
|---|---|---|---|
| 205 | Fairfax | VA | 22031 |

Form I-589 (Rev. 12/29/16) Y Page 9

**Part H. To Be Completed at Asylum Interview, if Applicable**

**NOTE:** *You will be asked to complete this part when you appear for examination before an asylum officer of the Department of Homeland Security, U.S. Citizenship and Immigration Services (USCIS).*

I swear (affirm) that I know the contents of this application that I am signing, including the attached documents and supplements, that they are all true or not all true to the best of my knowledge and that correction(s) numbered _____ to _____ were made by me or at my request. Furthermore, I am aware that if I am determined to have knowingly made a frivolous application for asylum I will be permanently ineligible for any benefits under the Immigration and Nationality Act, and that I may not avoid a frivolous finding simply because someone advised me to provide false information in my asylum application.

☐ I am aware or ☐ I am not aware

|  |  |
|---|---|
| _____ | _____ |
| Signature of Applicant | Date *(mm/dd/yyyy)* |

Write Your Name in Your Native Alphabet _____

Signed and sworn to before me by the above named applicant on:

_____
Signature of Asylum Officer

**Part I. To Be Completed at Removal Hearing, if Applicable**

**NOTE:** *You will be asked to complete this Part when you appear before an immigration judge of the U.S. Department of Justice, Executive Office for Immigration Review (EOIR), for a hearing.*

I swear (affirm) that I know the contents of this application that I am signing, including the attached documents and supplements, that they are all true or ☐ not all true to the best of my knowledge and that correction(s) numbered _____ to _____ were made by me or at my request. Furthermore, I am aware that if I am determined to have knowingly made a frivolous application for asylum I will be permanently ineligible for any benefits under the Immigration and Nationality Act, and that I may not avoid a frivolous finding simply because someone advised me to provide false information in my asylum application.

|  |  |
|---|---|
| _____ | _____ |
| Signature of Applicant | Date *(mm/dd/yyyy)* |

Write Your Name in Your Native Alphabet _____

Signed and sworn to before me by the above named applicant on:

_____
Signature of Immigration Judge

10

**Statement in Support of the Application
for Asylum of Hamza Daoud**

1. My name is Hamza Daoud, and I am seeking asylum in the United States because of my fear of returning to my home country of Sudan. I have been arrested and tortured by the Sudanese government because they see me as an opponent of the government. I escaped the country, but I know that I would not survive if I had to return against at this time. I was involved with a friend who worked with the UN on projects helping the women of Darfur. By that time, the use of rape as a weapon of war in the Darfur conflict had already been widely criticized in the world press, and is subjected the Sudanese government to much unwanted criticism and pressures. Because of my unwanted activities in these matters, I was punished hard, and I am afraid to go back.

2. My father is Fur, one of the main tribes of Darfur. His tribe, along with the other "African" tribes of the area were suffering great hardships because of the outrageous crimes committed upon them by the government and the militias that they supported. The ruling party of the government considers themselves to be "Arab," not African, and the tribes they support also tend to be Arab. There is a lot of racism in the country as the African tribes are looked down on by the Arab ones. In fact, in my own family I suffered from the punishments of racism from my maternal uncles, who used to beat me and my brother, severely, only for the reason of my father's tribe. They also used to hit my mother for this reason. I grew up understanding fully the racism experienced by the people of Darfur, as I suffered it in my own home. When I had the chance to help the people of Darfur I did not hesitate to do so.

3. My mother is of Egyptian origin and is much more light-skinned than is considered ideal in Sudan, in stark contrast to my father, who is from west of Sudan and dark-skinned. My mother was forced to marry my father, who is from west of Sudan and dark-skinned. My mother was forced, and beaten by her brother to marry my father when she was 17 and he was 27, after they got married they were discriminated against as a couple, mixed marriages were not favorable at that time, not even now. My brother believed it to be a good match because my father was well-educated and had a promising future. My brother did not realize the difficulties that the mixed nature of the marriage would have on the family.

4. My mother used to tell me that whenever they went out together people would stare at them and my father felt very uncomfortable. As I mentioned earlier, my mother is considered to light-skinned, and this made my father's family disapprove of the wedding. According to them she was "Halabiyya," a derogatory word in Sudan for light-skinned people.

5. My father divorced my mother suddenly after 8 yrs, when she was 23 yrs. Old, he divorced her by simply sending a letter to her brother at a time when she was gong

1

ready to join him upon his return from a long trip, my mother was devastated as she did not know the reason for the divorce. When my mother went back to live with her family, there were a lot of problems as we were not welcome to the household and we were not treated like our other cousins because our father was black.

6.  My mother became very sick and was hospitalized several times and was in and out of hospitals for almost 4 years, during that time I did not receive any vaccinations, no one in my mother's family cared enough to get my vaccinated when she was sick. We were treated very badly and called names. Our cousins whose fathers were white were treated differently.

## Suffering FGM as a Child

7.  There were also problems that my mother faced socially and from my father's family, they wanted to subject me to FGM, and they did. They not only did the FGM to me, but they did it in the most brutal and primitive way, what we call "phranomic," which is called Type III according to the WHO. I can still remember the faces of those women, one covered my mouth and had her whole upper body on my chest, one held each hand and each leg, I was screaming and they kept covering my mouth and telling me to shut up and that I was embarrassing them.

8.  During puberty I had to undergo another operation due to complications from the FGM, I also had to undergo a similar operation, when I got married and when I had my baby. Till this day, I am constantly reminded of what had happened to me when I was seven, it has affected my relationship with my husband. It was difficult for us to have intercourse and we sometimes had to use local anesthesia, because of the wrong way that I was circumcised, intercourse caused internal lacerations, I had to have another operation with full anesthesia for three hours and I stayed five days in hospital.

9.  My brother and I suffered a lot when we were young from the treatment of both my mothers' and father's families. When we went to our father's family, we were called the children of the "falahiya" and our mother's family would call us "slaves"

10. We were not accepted by both families and always felt rejected, till this day we suffer from discrimination, we were not able to live in peace with either party, nor even in my fathers' house, who had re-married a lady from his home town who hated us.

11. So when grew up I decided to help women and to stand by them so that they would not have the same fate as I did, especially women form the west of Sudan. Sudanese society is very cruel and treats people from the west and south Sudan as if they are

12

not human beings, women get raped, molested or even killed and no one would care. When my friend Maha told me of what she saw in Darfur, I decided to help them.

12. Maha told me that the government does not provide these women with any support or aid, even to those who become pregnant as a result of rape and that these women have no one to care for them. These women often undergo primitive abortions or they carry the pregnancy full term and either kill the baby or leave it at the footsteps of a mosque or a house.

## First arrest

13. The first time I experienced confrontation and threat from the Sudan government's ruling party was in early August of 2005. I was arrested on the third week of August, 2005 because I was seen with my friend Maha, who works with the UN one of the projects was pertaining to the women of Darfur. Maha travels a lot, going to the West (Darfur), and she sees a lot of what is really happening. She speaks about what she saw there, and this is dangerous for the government.

14. In early August, 2005, I traveled to Sudan, and after a few days, on the weekend, I met with Maha, Reem and their friends at the restaurant of the Grand Hotel. This historic hotel is centrally located along Nile Street, which is along the Nile River, in Khartoum. The restaurant of the hotel is a popular place to meet and talk. We were just sitting at a table together, drinking coffee and talking., I met them (same group) a second time the following week, the third time we met, two people approached me, a man and a woman. The woman said to me "Can you please come with us" and I asked her who they were, she said that they were hotel security and they showed me badges.

15. They took me to the hotel security office and they spoke with me about my clothes, asking me why I was dressed in a way that they did not consider to be conservative enough and that they needed to take me to the police station.  This was an excuse though, as they used this only to speak with me about Maha.  I was a new one to the group and from what they said, it seemed that Maha is under a lot of surveillance and they were surprised to see me, because they had not yet investigated me as one of her contacts. They asked me a lot about Maha and when I did not give them the answers they wanted, they took me to the Khartoum Police Station, where again I was asked about Maha and her activities.

16. The officer at the police station, advised me not to get involved with Maha because she is involved in activities against the government.. They view the UN's presence, and the humanitarian presence in general as a threat to their power, but it would be

13

very hard for them to arrest someone like Maha, who is member of the UN. In fact, it was these organizations and others, that had given the International Criminal Court evidence of the government's crimes in Darfur that led to the prosecution of President Omar El Bashir, and others, for war crimes. Maha knew that this was not correct and told us about why the government's story was wrong.

17. Maha does work for the U.N. She travels a lot, going to the West (Darfur), and she sees a lot of what is really happening in the country. The government does its best to control the flow of information in Sudan about what is really going on in Darfur, but she knew the real story first hand. She told me about what she saw there, and she spoke of the terrible atrocities committed upon the people there by the government. This knowledge made Maha dangerous for the government.

18. The government has their own story of what is happening in Darfur, that they express through the government controlled media, and they did not want anyone contradicting their version of events there. They used the media spin that this is a simple tribal conflict for land, and is not related to politics. Maha knew that this was not correct and told us about why the government's story was wrong. I said I don't know anything about such activities but he kept questioning me. I stayed until morning. Signed a paper (not to be involved with or take part in any of her activities) after that, I took a taxi home.

**Second arrest**

19. On 8/12/2011, I was arrested again for helping girls and women who had been victimized by the fighting in Darfur. In January of that year, my friends in Dubai and I had begun meeting to discuss what we can do to help the women of Darfur. I had previously learned from Maha about the extent of the atrocities in Darfur and what some of these women are subjected to, and I promised Maha that I will do my best to help these women. I got together with my friends and we began collecting donations, mostly money and used materials, I asked one of my friends to be in charge of collecting money and used materials and equipment and to send it to Sudan with the help of my brother's wife, who works at the Emirates Airlines. We collected the money first and sent it to Maha to rent a shelter for the women. After that we sent a container of materials and equipment. (Shipping was free as my sister in law works for Emirate Airlines).

20. The steps we took to assist these women were as follows:

   • January 2011, we started the meetings in Dubai

- Ferbuary, 2011, we collected money and we sent it to Maha to rent a place for the women fleeing the war in Darfur as a shelter.

- May, 2011, began collecting used goods sewing machines, other things the needed.

- Mid July, the container was sent to Sudan.

- First week of August, 2011. I traveled to Sudan, the container was at the shelter.

- On 8/11/2011 (morning), I went to the shelter – to see to the distribution of things and to meet Maha and to see the gifts and talk to them.

21. On 8/12/2011, at four in the afternoon, two men from the security forces and a driver came to my home in Khartoum North with an arrest warrant, picked me up and drove me in a car to the police station. Different officers interrogated me there. They asked about what Maha and I had been doing together. Maha and I have been working been working on creating a shelter for the women who had been displaced by the fighting and who had nowhere else to live.

22. Everything was in Maha's name and nothing was in mine, and when I told them that I knew nothing again and again, they finally released me on the third day, but not before subjecting me to physical beatings on the second day. They hit me a lot on that day, they were very angry with me, as many of the women that I was helping had been raped, and some of them were pregnant with the babies from rapes. This was potentially very damaging to the government.

23. On 10/27/2014, traveled to the United States, I met with Hala Badri at her house in Virginia, I was introduced to her through my friend Maha, who knows her family in Sudan. Maha told me that Hala and her family are activists and into women's rights and that Hala helped arrange visits of social workers for the women at the shelter and also to see if she can help us in any other way. I then became a member of her organization.

**Third arrest – 12/23/14**

24. On 12/15/2014, I traveled to Sudan because my father was very sick. Prior that he had a heart attack and heart valve replaced. I was very worried when he got sick and he was in the hospital for 4 days. After a few days, Maha came to my house and we

5

15

went to see the women and girls at the shelter. She had told me that there are now developments that I have to see.

25. There was a 14yr girl there who was raped and beaten, and there were also other women with very sympathetic histories. They were talking about what they had been going through and what they had suffered. I was documenting their stories on my small mobile phone. They told stories of being beaten and being raped because of their tribes. They further told stories about how they were even discarded as worthless and shamed by their own families. Their families did not want to deal with the loss of family reputation that they would lose if their daughter has sex before marriage. The fact that they were brutally and violently raped made no difference to their families. The loss of reputation based upon the shame remained too strong for the families to let the women stay in their family homes.

26. When I saw this, I texted my husband in Dubai and told him about what was going on and especially the young girl. He works for the MBC Group (Middle East Broadcasting Center) based in Dubai. This includes the popular channel, Al-Arabiya and he was going to submit this documentary evidence to the station.

27. He wanted me to interview her in a professional way, he advised me on the kinds of questions I should ask, and the next day after that, I interviewed the girl according to his instructions. I recorded it on my phone.

28. When Maha and I were leaving, we saw a lady (from west of Sudan) with her sister and she was crying and holding a baby. We went up to her and started talking. She was crying and we asked her why she was crying but she didn't answer. The baby did not look OK, I touched the baby and the baby was very hot. I said to her the child has a fever why not go to the hospital. She did not answer me but I figured out - since she was not far away from the clinic she probably did not have money, I gave her money and the minute I gave her the money, she ran into the clinic.

29. Maha and I decided to follow her to make sure everything is ok. She entered and then we entered behind her. She went into the reception counter where they take people for treatment. She gave him money and he said – no you have to pay at a different counter and then come back with a number and then we will let you in. So, at that point, Maha seeing all of this, approached him and started talking and said the baby is having convulsions, when you see a sick baby, you should immediately give treatment, it's an emergency he needs to see the doctor!

30. Many people were sitting there, but this was the only baby. Maha was very upset and insisted that he has to take the baby in. When I saw this happening, I remembered that

16

7

31. A got my mobile phone and videotaped the argument. When Maha saw me, she encouraged me to continue and she started insulting the government. She was saying: you are racist! Because she looks African. When Maha's voice became very loud, a guy came and asked why we were shouting and started pushing us to go out. He snatched the mobile from me.

32. Maha said it's better to leave and we walked to the shelter across the road. It seemed like somebody was following us. We were very upset and Maha was not able to drive – to stay for ½ hour to calm down, then we went to her house.

33. In the evening, she had some friends from the UN that she wanted to go and see, so we left and went to the house of her friends. We had dinner with them, then went back home. When we arrived, she was walking in front of me upstairs. Her family house was downstairs from her apartment, her apartment was upstairs from the family. We sat with her family, Maha told them the apartment was not like how we left it. It had been messed up, somebody had come in and some equipment was gone.

34. We had already told him about what had happened at the clinic and what happened at the shelter. He told me that because they had searched the house after looking at the phone means that they found something on my phone. He explained to me that that this was very serious and they wanted to find out if there is more. He said: "I would suggest that you don't stay much longer, tell your husband what happened in the clinic and what happened at the apartment." I spoke with my husband and he said he would call me back in a couple of hours. He called back and he gave me a phone and an address of the office of a man called Jamal who used to work at Al Arabiya in Sudan.

35. The Al Arabiya office had been closed since their reporting on the September 2013 demonstrations and killings by the Sudanese government, I made the appointment to meet them the next day and we arranged for Maha's friend to spend the night with us so we could take her car in case we are being followed. We drove her friend's car, Maha dropped me on Jamhuria Street and I went on a side road to Jamal's office, I met him, talked to him and gave him my passport. I asked him to make a reservation and exit visa for me to help me get out. He said he could do it in 2 days. After I left him, two guys came toward me, and began talking to me and asking me if I was exchanging foreign (hard) currency money in the black market, I was a little scared

and felt that they were using that as an excuse. I later found out that they were following us even though we used the car of Maha's friend.

36. They told me to go with them, and so I did. It was very aggressive, and they pushed my head down until we got to the station. I entered and there was an officer sitting down and he was very nervous and agitated. He said: "this is what we found on your phone." He said to me: "we found an interview that you made and videotaped." He said so many things about me and my husband and Al Arabiya, where they knew he worked. They questioned me about many things, and were even very suspicious of my prior trip to America and why I only stayed for 10 days. They also asked me who I met there. He asked me about the business cards of Ms. Haia Bashi, one from her work at the Department of State and another for her volunteer work at an American non-profit organization, called Sudan – American Foundation for Education. He was very suspicions of my relationship with her.

37. He remained very agitated by my answers and started hitting me and slapping me on my face. I had been standing at the time, and he brought his face very close to my face, while yelling at me, pointing at me, and threatening me. He hit me with both hands, first his right and then his left and then he pulled me from my hair very strongly.

38. I tried to hold his hand which he was holding my hair with and I was trying to push him away. It seemed like a long time and he pushed me very hard and I fell on the floor with my back down, then did not feel anything after that. I woke up in the hospital, with injuries and bleeding. I must have fallen on something because I had a big swelling on my back side. I asked why I was there, they told me that some people dropped at the hospital but they could not treat me because there is no form 8. I called my father and he came and picked me up.

39. Within a week I was gone, and I know that I cannot return while this government is in power

18



**EXHIBIT B**

Department of Homeland Security
U.S. Citizenship and Immigration Services

# THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT.

**I-797C, Notice of Action**

| RECEIPT NUMBER | | |
|---|---|---|
| ZAR1000207090 | | |

| RECEIVED DATE | PRIORITY DATE | NOTICE DATE |
|---|---|---|
| February 26, 2016 | February 26, 2016 | March 01, 2016 |

| CASE TYPE | |
|---|---|
| I589 Application For Asylum | |

| CODE | PAGE |
|---|---|
| 3 | 1 of 1 |

APPLICANT NAME AND MAILING ADDRESS

HANNA HASSIN ALI D
1700 WESTWIND WAY
MCLEAN VA 22102

A 208 841 444

aha,hh,lh,,hJ

You have been scheduled to appear at the below USCIS Application Support Center (ASC) to be fingerprinted and photographed (biometrics collection) during the 14-day period specified below. Completion of background identity and security checks is required in order to process your application.

Address

USCIS ALEXANDRIA
8850 RICHMOND HIGHWAY
SUITE 100
ALEXANDRIA VA 22309-1586

BIOMETRICS PROCESSING STAMP
ASC SITE CODE X____
BIOMETRICS QA/REVIEW BY:
TENPRINTS QA REVIEW BY:
ON

| 14-Day Period | Hours of Operation |
|---|---|
| 03/04/2016 to 03/18/2016 | CLOSED ON FEDERAL HOLIDAYS |
| | Mon - Fri 8am-3pm |

Sat - Sun Closed

Failure to appear as scheduled for fingerprinting and biometric collection during the 14-day period may delay eligibility for work authorization and/or for relief in an asylum officer dismissing your asylum application, and/or referring it to an Immigration Judge.

**Fingerprinting and biometrics collection.** This may cause a delay in the processing of your application and your eligibility for work authorization may be affected. This may cause a delay in the processing of your application, your family members, each individual must have his or her own notice, and bring his or her own identification to have biometrics taken. **Important:** If you appear for fingerprinting and biometrics collection, you **MUST BRING THIS LETTER**, or you will not be able to have your biometrics taken. This may cause a delay in the processing of your application. If you are required to present identification documents in order to have biometrics collected; however, if you have photo identification you should bring it with you. Biometrics processing may take no longer without identification.

Please note that ASC staff will not be able to answer questions about the status of your application. If you have questions, please contact the ASC office with jurisdiction over your application. Contact information can be found at the "Find a USCIS Office" link on the USCIS website at www.uscis.gov.

Pursuant to Section 265 of the Immigration and Nationality Act, you are required to notify the USCIS, in writing, of any address changes, including jurisdiction where you are placed in removal proceedings before an Immigration Judge, you are also required to notify the Immigration Court with jurisdiction over your case of any change of address within 5 days of such change, on Form EOIR-33. Include your name, address, and USCIS A# on any notice of change of address. The USCIS will use the last address you provided for all correspondence and the USCIS A# on any notice of change of address. The USCIS will use the last address you provided for all correspondence are not responsible for the contents of all USCIS correspondence sent to that address. Failure to provide your current in your absence, if you fail to appear for a hearing before an Immigration judge, and removal from the United States.

NOTE: USCIS will use your fingerprint to check its criminal history records of the FBI. You may obtain a copy of your own FBI identification records by following the procedures outlined within Title 28 C.F.R., Section 16.32. The procedures to change, correct, or update your FBI identification records are outlined within Title 28 C.F.R., Section 16.34.

**Rescheduling Form.** ☐ Please reschedule my appointment. Upon receipt of your request, you will receive a new appointment notice. Make a copy of this notice for your records, then mail the original with your request to: BPU, Alexandria ASC, 8850 Richmond Highway, Suite 100, Alexandria, VA, 22309-1586. If you have any questions regarding this notice, please call 1-800-375-5283.

If this is an interview or biometrics appointment notice, please see the back of this notice for important information.

Form I-797C (07/11)

**APPLICANT COPY**

20

Department of Homeland Security
U.S. Citizenship and Immigration Services

**Form I-797C, Notice of Action**

**THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT.**

| RECEIPT NUMBER | | RECEIVED DATE | | NOTICE DATE |
|---|---|---|---|---|
| ZAR1600028600 | | | | March 01, 2016 |

| CASE TYPE | | | |
|---|---|---|---|
| I-589 Application For Asylum | | | |

| APPLICANT ID | CODE | A 208 841 445 |
| 2 | 1 of 1 |

Address

USCIS ALEXANDRIA
8850 RICHMOND HIGHWAY
SUITE 100
ALEXANDRIA VA 220091586

ABDULLAHI ADEL FISO
1700 WESTWIND WAY
MCLEAN VA 22102

**14-Day Period**

03/04/2016
to
03/18/2016

**Hours of Operation**

CLOSED ON FEDERAL HOLIDAYS

Sat – Sun   Closed
Mon – Fri   8am-3pm

You have been scheduled to appear at the below USCIS Application Support Center (ASC) to be fingerprinted and photographed (biometrics collection) during the 14-day period specified below. Completion of background identity and security checks is required in order to process your application.

**PLEASE BRING THIS LETTER** and you will not be able to have your biometrics taken. This may cause a delay in the processing of your application and your eligibility for work authorization and/or delay your eligibility for certain benefits and protections. Even if you are required to present identification documents, each individual must bring his or her own notice. Note: Asylum applicants should bring evidence of photo identification. If you fail to appear as required may result in dismissal of all USCIS correspondence sent to the mail address you provided. Failure to provide your current address you fail to appear for a hearing before an Immigration Judge, and removal from the United States.

Please note that ASC staff will not be able to answer questions about the status of your application. If you have questions, please contact the ASC office with jurisdiction over your application. Contact information can be found at the "Find a USCIS Office" link on the USCIS website www.uscis.gov.

Pursuant to Section 265 of the Immigration and Nationality Act, you are required to notify the USCIS, in writing, of any address changes, within 10 days of such change. If you were placed in removal proceedings before an Immigration Judge, you are also required to notify the Immigration Court having jurisdiction over your case of any change of address, on Form EOIR-33. Included your name, address as it appears on your written notice of change of address. This USCIS will not use the last address you provided.

Please retain the contents of all USCIS correspondence sent to that address. Failure to provide your current address you fail to appear for a hearing before an Immigration Judge, and removal from the United States.

NOTE: USCIS will use your fingerprints to check the criminal history records of the FBI. You may obtain a copy of your own FBI identification record using the procedures outlined within Title 28 C.F.R., Section 16.32. The procedures to change, correct, or update your FBI identification record are outlined within Title 28 C.F.R., Section 16.34.

Rescheduling Form. □ Please reschedule my appointment. Upon receipt of your request, you will receive a new appointment notice. Make a copy of this notice for your records, then mail the original notice and your request to: BPU, Alexandria ASC, 8850 Richmond Highway, Suite 100, Alexandria, VA 22309-1586. If you have any questions regarding this notice, please call 1-800-375-5283.

If this is an interview or biometrics appointment notice, please see the back of this notice for important information.

**APPLICANT COPY**

Form I-797C 07/11/14 Y

BIOMETRICS PROCESSING STARTED 03-06-2016

BIOMETRICS QA REVIEW BY: _____ ON 03/22/2016
TENPRINTS QA REVIEW BY: _____
ON: _____

BIO SITE CODE